Davis v. Cook.

E. S. DAVIS, RECEIVER OF THE FIRST NATIONAL BANK OF NEVADA, RESPONDENT, v. LEWIS COOK et als., APPELLANTS.

REMOVAL OF SUIT TO FEDERAL COURT—JUDICIARY ACT OF 1789. To remove a suit from a state court to the United States circuit court under the judiciary act of congress of 1789 (1 U. S. Stats. 73, Sec. 12,) the application must be made by defendant at the time of entering his appearance in the state court; and if not then made, it will be too late.

REMOVAL OF SUIT UNDER ACT OF CONGRESS OF JULY 27, 1866. The act of congress of July 27, 1866, in reference to the removal of cases from state to federal courts (14 U. S. Stats. 306,) contemplates the case wherein a citizen of the state in which the suit is brought is or shall be a defendant, and has no application to a case where one defendant is an alien and the others are citizens of another state.

Davis *v.* Cook.

REMOVAL OF SUIT UNDER ACT OF CONGRESS OF MARCH 2, 1867. The act of congress of March 2, 1867, in reference to the removal of cases from state to federal courts (14 U. S. Stats. 558,) extends the right of removal to the plaintiff as well as to the defendant, when from prejudice or local influence either party reasonably believes he cannot obtain justice in the state court; but its phraseology excludes suits in which an alien may be a party.

CONSTRUCTION OF STATUTES "IN PARI MATERIA." Section 12 of the judiciary act of congress of 1789, and the acts of congress of July 27, 1866, and March 2, 1867, all relating to the removal of causes from state to federal courts, being *in pari materia.* must be construed together.

REMOVAL OF CASE TO FEDERAL COURT BY PART OF DEFENDANTS. If a suit be brought in a state court by a citizen against several joint debtors, and the only defendants served are not citizens, such defendants have the right to remove their case to a federal court,.though their co-defendant do not join in the application.

CITIZENSHIP OF FIRST NATIONAL BANK OF NEVADA. The First National Bank of Nevada, having its location in Nevada, is a citizen of the State of Nevada.

INTOXICATION OF JUROR AVOIDS VERDICT. Though the moderate use of liquor by a jury, unless furnished by the prevailing party, does not constitute such misconduct as will vitiate their verdict; yet, if it appear that any one of the jurors while sitting as such used liquor to an intoxicating extent, the verdict will be set aside.

USE BY PARTNERSHIP OF PROPERTY OF ONE PARTNER. In a suit against two of three copartners on notes given by the third in the firm name for the purchase by him of a store-house, where the plaintiff was allowed to show that the store was afterwards used by the copartnership: *Held*, that defendants had the right to show that they allowed their copartner rent for it.

TAKING NOTE IN NAME OF FIRM FOR INDIVIDUAL DEBT WITH FULL KNOWLEDGE. If one of several partners give a note in the name of the firm for his individual indebtedness, and the payee has full knowledge thereof, the loss or disadvantage resulting to the payee does not constitute a sufficient consideration to maintain an action against the other partners.

APPEAL from the District Court of the Ninth Judicial District, Elko County.

The facts are stated in the opinion. The notes sued on were dated in June, 1869 ; suit was commenced in December, 1870 ; and the judgment appealed from entered on June 7, 1872.

*Mesick & Wood*, for Appellants.

I.   The case should have been transferred to the United States circuit court.   14 U. S. Stats. 306, 558; *Fiske* v. *Union Pacific R. R. Co.*, 6 Blatchford, 377; *Dennistown* v. *Draper*, 5 Blatchford, 336; *Meadow Valley Mining Co.* v. *Dodds*, 7 Nev. 143; *Stewart* v. *Mordecai*, 40 Ga. 1.

II.   There was error in excluding proof by the witness Barnett that the First National Bank was in an insolvent condition, for about two months prior to October 6, 1869, when it suspended.   The theory of the defense was that the notes were given, not in the business of Cook Brothers, but in the individual business of Lewis Cook and were taken by the bank with knowledge of that fact and therefore in fraud of the rights of the firm of Cook Brothers; and that Lewis Cook and not the firm, should be called on to pay them. Every circumstance then which could conduce to show the existence of this knowledge on the part of the bank was proper matter to go to the jury.   Had the bank considered Cook Brothers justly liable for the payment of these notes, it would not have hesitated in its extreme necessities to present them to Cook Brothers for payment prior to its suspension.

III.   There was error in rejecting the deposition of Isaac Cook.   The theory of the plaintiff was that the stone store, though conveyed to Lewis Cook individually, was a purchase by the firm of Cook Brothers, and was their property and formed a part of the consideration of these notes, and in support of that theory he showed that the firm of Cook

Davis *v.* Cook.

Brothers occupied the store for their business. The deposition was clearly indispensable then to show that plaintiff's theory was wrong, and that the firm of Cook Brothers had no interest whatever in the property as purchasers and did not occupy it as owners.

IV. There was manifest error in giving instruction number fifteen for plaintiff. It informs the jury in effect that plaintiff can maintain this action against Cook Brothers provided any loss or disadvantage resulted to the bank, even though the transaction was had with Lewis Cook alone and for his individual benefit, and the bank knew such to be the character of the transaction.

V. There was error in refusing to grant a new trial upon the ground of misconduct of the jury, 1st, by receiving communications from outsiders in reference to the case under consideration ; 2d, by receiving and drinking bottles of whisky ; 3d, by getting drunk on the whisky, so as to unfit them for deliberation or for embodying their honest convictions, if they had any, in their verdict.

We do not contend that the mere drinking of liquor by the jurors vitiates the verdict; but we do insist that when jurors drink to such excess as to become intoxicated in the jury room and come reeling into court with their verdict, the fair inference is that they were in no better condition in the jury room; and that their verdict, rendered under such circumstances, is not the result of deliberation, but of a scandalous debauch. *Sacramento Co.* v. *Showers*, 6 Nev. 299; *Ryan*, v. *Harron*, 27 Iowa, 494; *Watson* v. *Walker*, 3 Foster, 471; *Walker* v. *Hunter* 17 Ga. 364; *Short* v. *West*, 30 Ind. 368; *Com.* v. *Ruby*, 12 Pick. 496.

*Ellis & King*, for Respondent.

I. The defendants did not bring themselves within the purview of any act of congress on the subject of removal of

cases from state to federal courts.   The application was not filed until long after the appearance of the two contesting defendants, and hence the application for transfer does not come under the general rule of sec. 12 of ·the judiciary act of 1789, nor does it come under either the act of July 27, 1866, or the act of March 2, 1867.   *Stewart* v. *Mordecai*, 40 Ga. 3; *Fisk* v. *U. P. R. R. Company*, 6 Blatchford, 377.

II.   That which is alleged as misconduct upon the part of the jurymen—namely, the drinking of whisky while deliberating upon their verdict to any extent whatever is only supported by the affidavits of four jurymen.   The impeachment by jurors of a verdict which they themselves rendered under the solemnity of an oath ought not to be tolerated.   As to John A. Cook's affidavit, it is based entirely upon information from third parties, that the jury drank whisky, and is scarcely competent evidence upon which to set aside a verdict.   See *State* v. *Jones & Nery*, 7 Nev. 434; 1 Term, 11; 1 Nev. 326; 4 Johns. 487; 5 Cowen, 106; 6 Cowen, 53; 1 Wendell, 297; 11 Vt. 1.

III.   The court did not err in excluding the proof of the insolvent condition of the First National Bank.   One of the notes had been due only about six weeks and the other only about five weeks before the suspension of the bank; and the mere fact that the payors had not been pressed for payment during that period certainly cannot create any ·presumption that defendants did not owe them.   The testimony was totally irrelevant and immaterial.

IV.   The exclusion of Isaac Cook's deposition was correct.   Although the deed may have been in the name of Lewis Cook and really for his own use and benefit and so intended; yet if it were represented to be a partnership business and was consummated in the name of the copartnership, the copartnership would be bound.   The transaction was in the scope of the partnership business ; and a

part of the consideration of the notes at least (the stock of goods) was enjoyed and used by the partnership, and at the bank the whole transaction was understood to be for the partnership.

V.    There was no error in the trial.    The action was brought upon promissory notes confessedly executed by a member of the firm, whose name was signed to them in a line of business of the firm and, *prima facie,* within the scope of his authority.    The user of the stock of merchandize as partnership property and the occupancy of the store for partnership purposes; the total failure to show that the bank had any knowledge that the transaction was an individual one, and not for the benefit of the firm though transacted in the firm name—all fully and completely sustain the action of the court below in all its rulings.


By the Court, BELKNAP, J.:


This is an action brought by the receiver of the First National Bank of Nevada against Lewis Cook, John A. Cook and Isaac Cook, comprising the firm of Cook Brothers, upon two promissory notes of the aggregate value of six thousand five hundred and eighty-seven $\frac{47}{100}$ dollars and interest, given in the partnership name to the bank.    John A. and Isaac Cook entered their appearance and answered for themselves only.    Service of summons was not made upon Lewis Cook.    The answer alleges that the firm name was used by Lewis Cook in the purchase of certain merchandise and real estate for his individual benefit from one W. D. Ivers and the firm of Bruckman & Ivers.    These parties, it is charged, were largely indebted to the plaintiff; and the notes in controversy were given to it in settlement thereof. It is also alleged that the officers of the bank had full knowledge of the transaction, and colluded and conspired

with Lewis Cook to cheat and defraud the defendants answering.

It appears that the firm of Cook Brothers were engaged in mercantile business at Hamilton, Nevada. Neither John A. nor Isaac Cook were residents of this State, and the management of the partnership business was confided to Lewis Cook. While thus conducting it and in the absence of his partners these notes were given. The action was brought in the District Court of the Eighth Judicial District, and after two mis-trials was transferred, by stipulation, to the Ninth Judicial District Court. The plaintiff recovered a judgment for the full amount prayed. From the judgment and an order denying a new trial this appeal is taken.

Before the trial in the State district court a motion was made to remove the cause to the circuit court of the United States, and in support thereof the following petition and affidavit were filed:

" [Title and venue.]

" To the Honorable District Court of the Eighth Judicial District of the State of Nevada, County of White Pine.

"The petition of John A. Cook and Isaac Cook, the defendants served and appearing in the above entitled action, respectfully represent: that the above cause was brought and is now pending in the said district court; that at the time the same was brought said plaintiff was and still is a resident and citizen of the State of Nevada, and the said defendants John A. Cook and Isaac Cook were and still are residents of the state of. California; that the defendant Isaac Cook was at the time of bringing said suit and still is a resident and citizen of the state of California; that at the time of bringing said suit the defendant John A. Cook was and still is an alien, born without the United States, and has never been naturalized as a citizen thereof: and that the defendant Lewis Cook has never been served nor appeared in

this action and is a non-resident of the State of Nevada, and not a citizen thereof; that the amount in controversy exceeds the sum of five hundred dollars, exclusive of costs; that your petitioners have made and herewith file the affidavit of John A. Cook, stating that they have reason to believe and do believe that from local prejudice and influence they will be unable to obtain justice in this Honorable Court. And your petitioners herewith offer surety that they will enter into the circuit court of the United States for the district on the first day of its session and the term next ensuing certified copies of all process, pleadings, depositions, testimony and other proceedings in said cause, and will appear therein and litigate the controversy commenced hereby. Wherefore your petitioners pray that in pursuance of the acts of Congress of the United States, in such cases made and provided, that said suit may be removed by the order of this Honorable Court into the next circuit court of the United States to be held within and for the District of Nevada, and that this Honorable Court proceed no further as to the defendants appearing herein, nor either of them."

The petition was signed by the attorney of the answering defendants and verified by the affidavit of John A. Cook. It is accompanied by a further affidavit of John A. Cook alleging his alienage; that Isaac Cook is a citizen of the state of California; that the amount in controversy exceeds the sum of five hundred dollars, exclusive of costs, and "that said defendants have reason to believe and do believe that from prejudice and local influence the defendants will not be able to obtain justice in the said State court." The requisite surety for entering certified copies of all process, etc., in the United States circuit court was also offered. The district court refused to remove the cause, and its ruling is assigned as error.

The acts of Congress conferring the right of removal of causes from state to federal courts, by reason of the citizen-

ship or alienage of a party, are the judiciary act of 1789, the act of July 27, 1866, and that of March 2, 1867. Section twelve of the judiciary act of 1789 provides for the removal of suits commenced in a state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state, in which the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs. In such case application for removal must be made by the defendant at the time of entering his appearance in the state court. It is clear that this cause could not have been removed under the provisions of the judiciary act, since the application was made after answering.

Under section twelve of the judiciary act it was held in equity cases where some of the parties were and others were not liable to be sued in the circuit court of the United States, the proper parties could remove the cause as to themselves in cases where a distinct and separate interest vested and substantial justice could be done without affecting their co-defendants. A different rule, however, prevailed at law, and unless all of the defendants joined in the application for removal, and all were citizens of some other state or states, the application was denied. The evident purpose of the act of July 27, 1866, was to relieve foreign defendants from their disability to remove suits when joined with citizen defendants in cases where a final determination of the controversy could be had without the presence of their co-defendants, who desired to remain in the state court or of whom the circuit court of the United States could not have jurisdiction. The act provides, "that if in any suit already commenced, or that may hereafter be commenced, in any state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state, and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, to be made to appear to the satisfaction of the court, a citizen of the state in which

the suit is brought is or shall be a defendant; and if the suit, so far as it relates to the alien defendant or to the defendant who is a citizen of a state other than that in which the suit is brought, is or has been instituted or prosecuted for the purpose of restraining or enjoining him, or if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause, then and in every such case the alien defendant, or the defendant who is a citizen of a state other than that in which the suit is brought, may, at any time before the trial or final hearing," have the cause removed to the circuit court of the United States. This act contemplates the case wherein "a citizen of the state in which the suit is brought is or shall be a defendant," and consequently has no application to the case at bar in which two of the defendants are citizens of the state of California, and the remaining defendant is an alien.

The act of March 2, 1867, provides that in a suit brought in a state court in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, and the amount in dispute exceeds the sum of five hundred dollars, exclusive of costs, such citizen of another state, whether he be plaintiff or defendant, if he will file an affidavit stating that he has reason to believe and does believe that from prejudice or local influence he will not be able to obtain justice in such state court and comply with other statutory requirements the case shall be removed to the United States circuit court. This act is amendatory of that of 1866. It extends the right of removal to the plaintiff as well as the defendant when from prejudice or local influence either party reasonably believes that he cannot obtain justice in the state court. The phraseology of the statute excludes suits to which an alien may be a party.

Section twelve of the judiciary act and the acts of 1866 and 1867 being *in pari materia* must be construed together.

The first two acts include cases to which an alien may be a party; but the act of 1867 by its terms provides for suits between "a citizen of the state in which the suit is brought and a citizen of another state." *Expressio unius est exclusio alterius.* And in analogy to the judicial construction of section twelve of the judiciary act this cause could not have been removed as to the defendant Cook, the citizen of California, even though there could have been a final determination of the controversy as to him without the presence of either of his co-defendants. But the defendants John A. and Isaac Cook could have removed the cause to the circuit court of the United States upon entering their appearance for that purpose, before answering, under the twelfth section of the judiciary act notwithstanding their co-defendant Lewis Cook did not join them in the application. Under the practice act of this State in actions against defendants jointly indebted the plaintiff may proceed against the defendants served with process, and if he recover judgment it may be enforced against the joint property of all and the separate property of the defendants served. *Vandevoort* v. *Palmer, Cook & Co.*, 4 Duer. 677. The plaintiff having elected to proceed against the defendants served, they could not have been deprived of the right of removal from the failure of the plaintiff to serve Lewis Cook, against whom it may not have been intended to have proceeded.

It is urged by respondent in justification of the ruling of the district court upon defendants' motion for removal that as the First National Bank of Nevada was incorporated under an act of the congress of the United States it is a citizen of the United States, and cannot be treated as a citizen of this State for jurisdictional purposes. This question was thoroughly investigated by Judge Blatchford in the case of the *Manufacturers' National Bank* v. *Baack*, reported in 2 Abb. U. S. Reports, 232. The various provisions, in respect to the "location" of banking associations

incorporated under the act of congress of June 3, 1864, en-
titled, "An act to provide a national currency secured by a
pledge of United States bonds, and to provide for the circu-
lation and redemption thereof," are there discussed. By
the sixth section of the act it is provided that the persons
uniting to form a banking association under the act shall
specify in an organization certificate the place where its
operations of discount and deposit are to be carried on,
designating the state, territory or district, and also the par-
ticular county and city, town or village. And by the eighth
section it is provided that its usual business shall be trans-
acted at an office or banking house located at the place
specified in its organization certificate. The ninth section
provides that the affairs of such banking association shall
be managed by a board of directors, at least three-fourths
of whom shall have resided in the state, territory or district
in which such association is located one year next preceding
their election as directors, and be residents of the same
during their continuance in office. Further sections speak
of the place where the association is "located" and "estab-
lished." "It is quite apparent from all of these statutory
provisions," says Judge Blatchford, "that congress regards
a national banking association as being 'located' at the
place specified in its organization certificate. If such place
is a place in a state, the association is located in the state.
It is, indeed, located at but one place in the state; but
when it is so located, it is regarded as located in the state.
The requirement that at least three-fourths of the directors
of the association shall be residents, during their contin-
uance in office, in the state in which the association is lo-
cated, especially indicates an intention on the part of con-
gress to regard the association as belonging to such state.
Three-fourths of the legal representatives of the unknown
associates forming the corporation, with which representa-
tives any person dealing with the corporation must deal, are

required to reside in the State where the corporation is 'located.'" A corporation existing by virtue of an act of the Congress of the United States must be considered a citizen of the United States. But a citizen of the United States resident in any state in the Union is a citizen of that state. *Gaines* v. *Ballou*, 6 Pet. 761. The residence of the National Bank being in Nevada it follows that it is a citizen of Nevada. The motion to remove the cause to the federal court was properly denied.

Misconduct of the jury is also assigned as a reason why a new trial should have been granted. The misconduct consisted, in part, of the receipt by members of the jury of communications intended to influence their deliberations from persons without the jury-room. The fact of the receipt of the notes was properly reported to the district court by the foreman of the jury and in its presence upon delivering the verdict. One of these communications, addressed to a juryman, was preserved and is set forth in the record. It reads: "I want you to do all you can for defendants and come to a decision. FRANK." The others, presumably of the same character, were destroyed. So flagrant an attempt to corrupt the administration of justice deserves the severest censure. It became the duty of the court upon receiving the information to promptly investigate the charges and to check such practices by exemplary punishment of the guilty parties.

Further misconduct is shown by the uncontradicted affidavit of John A. Cook, wherein he says "that when the verdict of the jury was returned into the court-room on the morning of the 5th of June one of the jurors was intoxicated." In some of the states of this Union the use of spirituous liquors by the jury without the permission of the court will avoid the verdict, but in this and other states the rule has been so far modified that the moderate use of liquors unless furnished by the prevailing party does not

constitute such misconduct as will vitiate the verdict.   No
court, however, should hesitate to set aside a verdict formed
by a jury any one of whom has, during the performance of
his duties, used liquor to an intoxicating extent.   Although
it requires but three-fourths of their number to agree upon
a verdict, the correct administration of justice demands the
exercise of the cool, unclouded and sober judgment of the
twelve men who are selected to investigate the facts at issue.
In vindication of the character of courts and the purity of
jury trials a verdict participated in by a juryman with pas-
sions inflamed and reason impaired by ardent spirits should
not be allowed to stand.   Trial by jury, regarded by our
ancestors as the principal bulwark of their liberties and the
glory of the English law, would degenerate into a mockery
of justice if verdicts were capriciously determined by intoxi-
cated jurors.   The judgment must be reversed.

The remaining errors to which our attention has been
directed by counsel are:

First.   The refusal of the court to admit in evidence the
deposition of Isaac Cook, to the effect that himself and John
A. Cook, of the firm of Cook Brothers, allowed their part-
ner rent for the store purchased of Ivers.   The plaintiff had
shown that the real estate for which, in part, the notes in
suit were given, was used as a store by the defendants sub-
sequent to its conveyance to Lewis Cook.   If this evidence
was admissible, the defendants Isaac and John A. Cook
were entitled to explain their relation to the property.

Second.   Allowing the fifteenth instruction asked by the
plaintiff.   It reads: "The jury are instructed that, if by rea-
son of the transaction that induced the execution of the
notes sued upon in this action, any benefit accrued to the
defendants, or any loss or disadvantage resulted to the First
National Bank of Nevada, then there was a sufficient con-
sideration for said notes to maintain this action."

This instruction ignores the defendant's theory, which is, that the notes in question were given by Lewis Cook for his individual indebtedness with knowledge thereof on the part of the payee. In such case loss or disadvantage must have resulted to the First National Bank of Nevada, but such loss does not constitute a sufficient consideration to maintain this action. In excluding evidence upon the question of the financial condition of the bank addressed to the witness Barnett, and in giving the seventh and tenth instructions asked by plaintiff, and refusing the tenth instruction asked by defendants, we see no error.

Judgment reversed and cause remanded for new trial.

HAWLEY, J., having been of counsel for defendants, was disqualified, and did not participate in the foregoing decision.