The opinion of the court was delivered by
Brewer, J.:
This was an action to recover for professional services as an attorney. Bailey was a defendant in an action of ejectment brought by one Bixby. In that action Perry, the plaintiff in error, appeared as attorney for Bailey, tried and won the case. He then brought this action to recover for his services. On the trial it appeared that Bailey had *542 purchased the land in controversy in the ejectment case, from Simeon Pox, who had obtained it by deed from Dana Fox, his father. The defense in this suit was, that Bailey, after having been served with summons in the ejectment case notified his grantors, and called upon them to conduct the defense and make good their warranty, and that thereupon Dana Fox employed the plaintiff, and under that employment the plaintiff acted. The testimony was somewhat conflicting, but it seems to us there was ample to have warranted the jury in finding for the plaintiff. But there was also positive testimony on the part of the defendant that he had not employed plaintiff, and circumstantial testimony tending to show an employment by Fox.' Under these circumstances, the questions of fact having been submitted to and decided by a jury, it is, under well-settled principles, beyond the province of this court to disturb the decision on the ground that it was not sustained by the evidence.
i.implied prom-for services, Nor do we see any error in the modification of the third instruction asked by plaintiff The law will, it is true, sometimes imply a promise to pay for services when there has been no express employment; but it will not imply a promise on the part of one party to pay for services rendered under a direct and express employment by another. Indeed, we do not understand counsel as criticising the correctness of the law enunciated, considered as an abstract statement, but as denying its application to this case, and insisting that, being inapplicable, it tended to mislead. There was, it was true, no direct evidence of plaintiff’s employment by Dana Fox, but there was circumstantial testimony tending to establish such employment, strong enough, as it would seem, to have convinced the jury; for, under the instructions of the court, only upon the theory of an express employment by Dana Fox could the jury have found against the plaintiff.

*543
3 impeaching Affidavits of lurors.

*542 The only remaining ground of reversal presented is misconduct of the jury. On the motion for a new trial two affidavits were read without objection; one the affidavit of (S. B. Cutler, one of the jurors who tried the case, who *543 testified that E. F. Dixon, another of the jury, “was intoxicated while acting as a juror at said term; that while the said case was being tried, and during the recess of said court, he saw said Dixon in a saloon, drinking, and while the said jurors were in their jury room deliberating upon their verdict, the conduct of said Dixon was abusive, and like that of a drunken man; and witness believes that the said Dixon in said jury room wfis in a state of intoxication;” and the other the affidavit of J. B. Brooks, who testifies that during that term he frequently saw said E. F. Dixon in a state of intoxication. No counter testimony was offered, and the question is, whether upon this showing the verdict ought to have been set aside. A preliminary inquiry is, whether the testimony offered was competent. The misconduct of one juror is attempted to be shown by the affidavit of another. It may perhaps be said that no objection was urged to this testimony, and that if'the parties were satisfied to admit it, this court might properly treat it as competent. As the qfiestion is however of some importance in the practice, it seems to us better to dispose of it upon its merits. It cannot be disputed that the general rule is, that affidavits of jurors, while received to sustain or explain their verdict, are inadmissible to impeach or overthrow it. (Allison v. People, 45 Ill., 37; Knowlton v. McMahon, 13 Minn., 386; Shaw v. Fisk, 21 Wis., 368; Sawyer v. H. & St. Jos. Rly. Co., 37 Mo., 240; State v. Millican, 15 La. An., 557.) In Tennessee however this is not regarded as correct, and affidavits of jurors, even of their own misconduct, are received for the purpose of impeaching and setting aside their verdict. (Crawford v. The State, 2 Yerger, 60; Elledge v. Todd, 1 Humph., 43; Norris v. The State, 3 Humph., 333.) The supreme court of the United States, while recognizing the rule, intimated that it might not be of universal application, and that cases might arise in which .public policy, upon which the rule rests for support, might require in the interests of justice that such testimony be received to overthrow a verdict. (U. S. v. Reid, 12 How., 361.) *544 In California, by statute, affidavits of jurors are admissible to show that the verdict was obtained by lot or chance. (Turner v. Tuolumne Water Co., 25 Cal., 397.) In Massachusetts overt acts may be proved by the testimony of jurors, to impeach their verdict. (Grinnell v. Phillips, 1 Mass., 530; 3 Graham & Waterman on New Trials, 1434.) In Ohio it has been held that where there is evidence aliunde of misconduct of the jury, their own testimony may be received, not only to limit and explain, but also to enlarge and aggravate such misconduct. (Farrar v. The State, 2 Ohio St., 54.) In the supreme court of Iowa the matter has received the most thorough examination. In Wright v. I. & M. Telegraph Co., 20 Iowa, 195, Cole, J., after a full consideration of the authorities, thus states the conclusion to which the court arrives: “That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occuring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court, and in the presence of jurors; that the verdict was determined by aggregation and average, or by lot, or game of chance, or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court, the statements of the witnesses, or the pleadings in the case; that he was unduly influenced by the statements (or otherwise) of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror’s breast.” (The rule here stated was reaffirmed in Cowles v. C. R. I. & P. Rld. Co., 32 Iowa, 515.) This quotation from the opinion of Mr. Justice Cole seems to us to state very clearly and correctly the law applicable to questions of this kind. As to all those matters lying outside the personal consciousness of the individual juror, those things which are matters of sight and *545 hearing, and therefore accessible to the testimony of others, and subject to contradiction, “overt acts,” as the Massachusetts court expresses it, it- seems to us that the interests of justice will be promoted, and no sound public policy disturbed, if the secresy of the jury box is not permitted to be the safe cover for the perpetration of wrongs upon parties litigant. If the jury has been guilty of no misconduct, no harm has been done by permitting their testimony to be received. If the jury has been guilty of misconduct, but such misconduct was not of such a nature as to prejudice the rights of the parties, the modem rale is to let the verdict stand, and simply punish the offending juror. But if. such misconduct has wrought prejudice, not only should the juror be punished, but the verdict also should be set aside. Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to induce bad faith on the part of a minority, to induce an -apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. But as to overt acts, they are accessible to' the knowledge of all the jurors ; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law the affidavits were properly received. They tended to prove something which did not essentially inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one. If one juror was drunk while the jury were in their room deliberating, it was a fact he could hardly keep to himself; it was not a matter re'sting wholly in his own consciousness.

*546
4. intoxication of juroi.

*545 The testimony being competent, on the facts proved, should the verdict have been set aside? As to how far and under what circumstances the drinking of intoxicating liquors, and drunkenness, affect a verdict, the authorities are not uniform. *546 In some cases it has been held that the mere drinking of intoxicating liquors, without regard to the quantity or the effect, is good ground for setting aside a verdict. (People v. Douglass, 4 Cowen, 26; Bryant v. Fowler, 7 Cowen, 562; State v. Baldy, 17 Iowa, 39; Ryan v. Harrow, 27 Iowa, 494.) While on the other hand, in Pelham v. Page, 1 Eng., (Ark.) 535, the verdict was sustained, although it appeared that two or three of the jury were intoxicated during the trial) on the ground that, the testimony not being preserved in the record, there was nothing to show that the verdict was not exactly what it ought to have been. We think however the great weight of authority establishes these prop-, ositions: That if a juror during the progress of the trial drinks intoxicating liquor on the invitation and at the expense of the party who afterward has the verdict, or if at his own expense he drinks so much as to be under the influence of the liquor while sitting in the case, the verdict ought not to stand; and on the other hand, the mere drinking of spirituous and intoxicating liquors by a juror during the progress of a trial is not, in and of itself, sufficient to set aside a verdict. (See as authorities on these propositions, 2 Graham & Waterman on New Trials, 564; Wilson v. Abrahams, 1 Hill, 207; Purinton v. Humphreys, 6 Green, 379; U. S. v. Gilbert, 2 Sumner, 21; Rome v. The State, 11 Humph., 491; Richardson v. Jones, 1 Nev., 405; State v. Jones, 7 Nev., 408; Gilmanton v. Ham, 38 N. H., 108; Pope v. The State, 36 Miss., 121; State v. Cueuel, 31 N. J., 249; Creek v. The State, 24 Ind., 151.) Aware as all are of the subtle and potent influence of liquor on the brain, no judge should for a moment permit a trial,to proceed where it appeared that any juror was under the influence of intoxicating drink, or permit a verdict to stand which was not the cool, deliberate judgment of sober men. But, with the habit of drinking so common as it unfortunately is, to hold that, if a juror should during a protracted trial take a single drink of liquor, the verdict thereafter rendered must be set aside therefor, would be giving to verdicts of juries a dangerous and unnecessary instability. It appears *547 from the affidavits in this case that the juror was frequently intoxicated during that term of court. So far as this testimony refers to the time putside of that in which he was engaged as a juror in this case, it is insufficient. That a man has at some time in his life been drunk, is not a statutory or common-law disqualification of a juror. That he was in a saloon, during the progress of the trial, drinking, is not under the rule as stated sufficient to set aside the verdict. But it also appears that while the jury were in their room, this juror’s conduct was abusive, and like that of a drunken man; and that in the judgment of the witness he was intoxicated. The testimony on this point is not very full, nor. very positive. Yet there is no conflict. It is left without denial to rest upon this one affidavit. It seems to us a just and fair conclusion, from these two affidavits, that the juror had, to use the language of Mr. Jusice Bronson in Wilson v. Abrahams, supra, “drank so much as to unfit him for the proper discharge of his duty.”
For this reason the judgment of the district court will be reversed, and the case remanded for a new trial.
All the Justices concurring.