St. Louis Nat. Bank *v.* Allen and others.

(*Circuit Court, D. Iowa.* ———, 1881.)

1. NATIONAL BANK—JURISDICTION OF CIRCUIT COURT—CITIZENSHIP.
   A national bank is not authorized to sue in any circuit court of the United States without regard to citizenship.

2. SAME—JURISDICTION—CITIZENSHIP.
   A national bank is to be regarded, for the purpose of jurisdiction, as a citizen of the state in which it is established or located.—[ED.

*John N. Rogers,* for demurrer.

*Hagerman, McCrary & Hagerman, contra.*

McCRARY, C. J.   The demurrer to the petition in this case raises the question whether a national bank, organized under the act of congress of June 3, 1864, (13 St. 12,) and located in St. Louis, Mo., is authorized to sue, in this court, a citizen of this state.   In the discussion of the demurrer two questions have been suggested: (1) Whether a national bank is authorized to sue in any circuit court of the United States independently of any question of citizenship; and (2) whether, for the purpose of jurisdiction, a national bank is to be regarded as a citizen of the state in which it is established or located.

1. Although upon the first question there may be room for doubt, we are inclined to answer it in the negative. The language of the statute is that national banks shall have power "to sue or be sued, complain and defend, in any court of law or equity as fully as natural persons." A fair construction of this provision would seem to go no further than to place these corporations on an equal footing with natural persons, and to confer upon them the right to sue and be sued in the federal court only to the same extent as natural persons, and under like circumstances and conditions.

The first charter of the United States Bank, enacted in 1791, (1 St. 181,) contained a provision which empowered the bank "to sue and be sued, etc., in any court of record, or any other place whatsoever." This language is more comprehensive than the corresponding clause above quoted from

the present banking act, for it does not contain the words "as fully as natural persons," and yet it was construed by the supreme court as not broad enough to authorize suit by a bank in a circuit court of the United States. *U. S. Bank* v. *Devaux,* 5 Cranch, 85. In that case the court held that the general words employed in the act gave only a general capacity to sue, and not a particular privilege to sue in the courts of the United States.

It was probably in view of this decision that congress, in the second bank charter, enacted in 1816, (3 St. 101,) provided expressly that the bank should have power to sue and be sued "in all courts having competent jurisdistion, and in any circuit court of the United States."

Upon the first question, therefore, our conclusion is that, as the right of a national bank to sue in this court is assimilated to the right of a natural person under the statutes to do so, it is a right which can be maintained only upon the ground of citizenship, since that is the test which must be applied to natural persons.

2. Can the plaintiff, a national bank, sue as a citizen of Missouri? By a long course of adjudication by the supreme court of the United States it has been settled that a state corporation is, for jurisdictional purposes, to be regarded as a citizen of the state by whose laws it is created.

These adjudications are, however, for the most part not placed upon the ground that a corporation can in any proper sense be a citizen within the meaning of that term as employed in the constitution. On the contrary, it is repeatedly declared that a corporation cannot possess the attributes of citizenship, and the rule is upheld upon the ground that a suit brought by or against a corporation is regarded as a suit brought by or against the stockholders of the corporation, and for the purposes of jurisdiction it is conclusively presumed that all the stockholders are citizens of the state which, by its laws, created the corporation. *Insurance Co.* v. *French,* 18 How. 404; *Muller* v. *Dows,* 94 U. S. 444; *Covington Drawbridge Co.* v. *Shepherd,* 20 How. 233.

The question for our consideration in this case is, does this

rule apply to a national bank created by act of congress, but located and established within a particular state? It is clear that a corporation acquires no attribute of citizenship by being organized under, or created by, a state law that it would not possess if created by a law of the United States. The difficulties in the way of permitting corporations to sue in the federal courts on the ground of citizenship, apply with the same force whether a corporation derives its existence from a state or a national law. The difficulties have been overcome, with respect to state corporations, by adopting an arbitrary presumption as to the citizenship of the stockholders—a presumption, no doubt, often contrary to the fact, but justified, in the opinion of the supreme court, by considerations of great public importance. These considerations apply alike to all corporations located and doing business within a state, whether chartered under state or federal authority. The policy of the adjudications referred to is to treat corporations as citizens of the state in which they are located; the circumstance that they derive their existence from a state law makes no difference. If they are created by an act of congress, and located within a state, they become, within the reason of the rule, citizens of the state as much as state corporations. In delivering the opinion of the supreme court in *Letson's Case,* (the leading case upon this subject,) Mr. Justice Wayne said: "When a corporation exercises its powers in the state which chartered it, that is its residence." 2 How. 497. An examination of the national bank act will clearly show that national banks are, in most respects, purely local institutions. They are distributed among the states and territories with due regard to their several wants, and by a fixed rule of apportionment. It is provided by the sixth section of the act of 1864 that the organization certificate of every national bank "shall specify the place where the operations of discount and deposit of the association are to be carried on, designating the state, territory, or district, and also the particular county and city, town, or village." Numerous other provisions of the act refer to the associations to be organized under it as

"located" within the states.    They are also made subject to taxation under state law.

It is far from correct to say that because they are organized under a law of the United States they possess the same and equal rights in all the states.    They must carry on their business of banking at the place named in their organization certificate, and nowhere else.    For all practical purposes they exercise their functions only within the limits of the state in which they are located, and should one of them attempt to carry on business outside of those limits, it would find itself completely without authority.    For these reasons we conclude that a national bank, being a corporation created by competent authority and located within a state, with power to transact business there and not elsewhere, should be regarded, for all the purposes of the jurisdiction of the federal courts, as on an equal footing with state corporations.    This view is much strengthened by the provision of the bank act already quoted, which gives these corporations power to sue and be sued "in any court of law or equity as fully as natural persons."    If this provision is construed as excluding all cases by or against a national bank which could not be brought by or against a natural person, it must also, we think, be construed as including all cases in which the court would have jurisdiction if the bank were a natural person.    In other words, congress, by enacting this provision, must be supposed to have assumed that these corporations would be regarded for jurisdictional purposes as citizens of the states where located, for otherwise it would have been impossible to confer upon them the right to sue in all courts "as fully as natural persons."    It must have been understood by congress that they were, for jurisdictional purposes, to stand in the attitude and possess the attributes of natural persons.

It is insinuated that jurisdiction in this case is, by necessary implication, excluded by the terms of section 629 of the Revised Statutes, which, among other things, provides that the circuit courts shall have original jurisdiction "of all suits by or against any banking association established in the dis-

trict in which the court is held, under any law providing for national banking associations." But it is very clear that the effect of this provision is not to oust the court of jurisdiction under other provisions of the statutes of the United States. It gives to the circuit courts jurisdiction in cases by or against national banks "established in the district in which the court is held," independently of any question of citizenship, and without reference to the subject-matter; but it does not prohibit the exercise of jurisdiction in any case which, under the bank act itself, or under the judiciary act, or any of its amendments, might have been brought independently of that provision. There is nothing in the language in question to exclude jurisdiction in any other class of cases; it is permissive merely, and there is no necessary conflict between it and the provisions of law under which jurisdiction is claimed in the present case.

Our attention has also been called to the provisions of section 640 of the Revised Statutes, by which national banks are excluded from the right conferred upon other federal corporations, to remove suits brought against them in the state courts; but we are unable to see that this provision has any application to the question of the original jurisdiction of the circuit court. The conclusions we have reached are supported by the following authorities, and we know of none to the contrary: *Manuf. Nat. Bank* v. *Baack*, 8 Blatchf. 137; *Cooke* v. *State Nat. Bank*, 52 N. Y. 96; *Davis* v. *Cook*, 9 Nev. 134; Dillon on Removal of Causes, 51.

The demurrer to the petition is overruled.

LOVE, D. J., concurs.