ELIZABETH E. UNDERWOOD *et al.*, Executrices, *vs.* OLD COLONY STREET RAILWAY CO.

### JULY 12, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Misconduct of Juror.   Intoxication.   New Trial.*

A new trial will be granted where it appears that during a trial a juror was for at least two days so much under the influence of liquor that he was asleep a large part of the time, and by his conduct and actions revealed his own inattention and unfitness to serve as a juror.

(2)   *Misconduct of Juror.   Intoxication.   Waiver.*

Immediately upon the convening of court on Tuesday, after an adjournment on Monday afternoon, defendant's attorney moved that the case be taken from the jury on account of the intoxication of a juror.

*Held*, that defendant had not waived its right to object to such misconduct on Monday afternoon, by not bringing it to the attention of the court at that time, since no unreasonable time was taken by counsel in the investigation of the misconduct of the juror.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant, and sustained.

JOHNSON, J.   This is an action of trespass on the case, for negligence of the defendant railway company in causing the death of the plaintiffs' testator.   The plaintiffs in this case are the executrices of the deceased, who are suing for the benefit of the three adult daughters of the deceased.

On the eighteenth day of September, 1908, William Bailey, a man eighty-five years of age, was driving southerly on the the main road in Middletown toward his home.   As he reached the driveway leading to his home he turned to go in, and was crossing the tracks of the defendant when one of its rapidly moving cars struck one of the rear wheels of his buggy and threw him out, injuring him so that he died fifteen days later.

The case was tried before Mr. Justice Baker and a jury, June 18, 21, 22, 23, and 24, 1909, in the Superior Court for Newport county, and resulted in a verdict for the plaintiffs for $9,500.

At the close of the second day of the trial, Monday, the court adjourned over until the next afternoon. About two o'clock on Tuesday, before the trial was resumed, counsel for the defendant called the attention of the trial justice to the fact that one of the jurors, Louis S. Sisson, had been intoxicated the day before, while testimony was being taken, and was then intoxicated and not in a fit condition to serve upon the jury, and that he had during Tuesday expressed opinions hostile to the defendant, showing a bias and prejudice against the defendant which made him an unfit juror to sit in the case, and had otherwise misconducted himself. The judge then said that he would first hear the motion for a nonsuit, which was about to be made, and would then take up the matter of this juror. He first talked privately with the juror and then the trial was resumed.

When the motion for a nonsuit had been argued and denied, counsel for the defendant presented a written motion, as follows:

"Now comes the defendant in the above entitled cause and moves that said cause be taken from the present jury and passed because one of said jury, viz.: Louis Sisson has misbehaved and conducted himself improperly in that he has been intoxicated while said trial was in progress and testimony being taken and still is intoxicated and also because he has discussed said case during the trial with persons other than the jurymen and expressed an opinion upon the merits of the same, that he has been asleep while said case has been in progress and testimony was being taken and in other respects has conducted himself improperly as a juror to the prejudice of the defendant, and defendant hereby offers to introduce evidence in support of said motion."

The trial justice then declined to listen to such evidence on the ground that it could be more properly presented in support of a motion for a new trial, if the jury should return a verdict for the plaintiffs. To this ruling the defendant took an exception. The trial justice then denied the motion for a continuance and to this ruling, also the defendant took an exception.

After verdict, the defendant in due time filed a motion for a new trial upon the following grounds:

"*First.*   That said verdict is against the law.

"*Second.*   That the said verdict is not supported by suffi-cient evidence.

"*Third.*   That said verdict is against the evidence and the weight thereof.

"*Fourth.*   That the damages awarded by said verdict are excessive in view of all the testimony in the case.

"*Fifth.*   That the said defendant has discovered new and material evidence in said cause which it had not discovered at the time of the trial thereof and which it could not with reasonable diligence have discovered at any time previous to the time of said trial, as by affidavits to be filed in court will be fully set forth, said affidavits being made a part of this motion by reference.

"*Sixth.*   That said defendant did not have a fair trial of said cause before a competent and impartial jury, inasmuch as one member of said jury, namely, Louis Sisson, was repeatedly intoxicated while said trial was in progress and testimony was being taken therein before said jury, and was asleep during a part of the time when said trial was in progress and testimony was being taken therein, and was biased and prejudiced against the defendant, as shown by remarks made by him to other persons while said cause was being tried and during adjournments taken by said court, and misconducted himself in other ways, all of which will be shown by affidavits to be filed in court in support of this motion, said affidavits when filed to become a part of this motion by reference.

"*Seventh.*   That one member of said jury, namely, Louis Sisson, misbehaved and misconducted himself repeatedly during the trial of said cause by becoming intoxicated and sitting on said jury in an intoxicated condition while the trial of said cause was in progress and testimony was being taken therein before said jury, and by going to sleep during the trial of said cause and while testimony was being taken therein, and by interfering with the attention of other members of said jury

by whispering and talking to them and by striking and nudging them with his hands and feet while said trial was going on and while testimony was being taken therein, and by discussing said cause with persons who were not members of said jury and expressing opinions thereon unfavorable to the defendant during adjournments of the court while said cause was being tried, and that he misbehaved and misconducted himself in other ways, all of which will be shown by affidavits to be filed in court in support of this motion, said affidavits when filed to become a part of this motion by reference."

In support of the last two grounds for a new trial the defendant filed 36 affidavits as to the condition of the juror Sisson during the trial and as to statements made by him showing bias and prejudice against the defendant, and as to other misconduct on his part. The plaintiffs in opposition filed 24 counter affidavits.

After hearing counsel and considering the affidavits, the trial justice denied the motion so far as it was based on the verdict being against the evidence and the weight thereof, and against the law. He also denied it so far as based upon the condition and misconduct of the juror Sisson and his bias and prejudice. In doing so, as his rescript shows, he refused to consider any intoxication or misconduct on the part of Sisson on the day previous to the day when the motion to pass the case was made or after the motion was made, on the ground that it was not shown that counsel for the defendant was ignorant of it when said intoxication or misconduct occurred. He was not convinced that Sisson was so intoxicated on the afternoon when the motion was made that he was unfit to act as juror, though he had evidently been drinking. He further stated in his rescript that he was convinced that he was wrong in refusing to hear testimony as to Sisson's intoxication and misconduct at the time it was offered in support of the defendant's motion to pass the case.

As to the ground that the amount of damages was excessive, he ruled that it was well taken, and that the evidence would not support a verdict for more than $3,000. He accordingly

decided that defendant's motion for a new trial should be denied on condition that the plaintiffs would within ten days remit all of the verdict in excess of $3,000, but should be granted unless they did thus file a remittitur. No remittitur was filed, and both the plaintiffs and the defendant excepted to the ruling upon the motion for a new trial. In proper time both parties filed bills of exceptions, of which the defendant's incorporated not only the exception to these rulings, but also the exceptions taken in the course of the trial.

The case is now before this court upon said two bills of exceptions.

The plaintiffs' only exception is to the decision of the trial justice granting defendant's motion for a new trial unless the plaintiffs within ten days remit in writing all of the verdict in excess of $3,000.

The defendant's bill sets out a large number of exceptions. In our opinion, however, the exceptions concerning the misconduct of the juror demand the first consideration. These exceptions are set out in its bill as numbers 13, 14, and 22.

No. 13 is "to the refusal of said justice at said trial to grant the defendant's motion that the said cause be taken from the jury and passed, as shown on page 281½ of said transcript."

No. 14 is "to a certain ruling of said justice at said trial excluding certain evidence offered by the defendant in support of its said motion that the case be taken from the jury and passed, as shown on pages 281½ and 282 of said transcript."

No. 22 is "to the decision of the trial justice, denying the defendant's motion for a new trial on condition that the plaintiff would remit all of the verdict in excess of ($3,000) three thousand dollars, which motion was based upon the following grounds:" (reciting the grounds, of which the sixth and seventh quoted *supra*, are the ones relating to the misconduct of the juror).

We will consider said 6th and 7th grounds. The defendant has presented some thirty affidavits to prove the condition of Sisson during the course of the trial. Three are affidavits of jurymen, six are of persons who have absolutely no interest in

the case, four are of persons who have been employed by the defendant from time to time in a professional capacity as physicians or engineers, and the remainder are of persons regularly employed by the defendant. At the noon recess of Monday, June 21, Sisson, together with other jurors, went to McGowan's restaurant in Washington Square, Newport, for lunch. What occurred at that time is attested to by the waiters, fellow-jurors, and others. Sisson was so boisterous and used such profane language that he had to be warned two or three times, by the waiters, to be quiet. In vile words he ordered more beer for himself and his friends who sat with him, and who were fellow-jurors. The foreman of the jury cautioned the waiters against serving him with any more intoxicating liquor. Before the end of the meal, however, he became positively drunk. When he arose from the table his gait was unsteady, and he staggered as he left the restaurant on his way to the court. Before entering the court house he sat on the steps for a while, and talked like a drunken man, and he was intoxicated when he entered the court room.

Some twenty-five persons who were present as fellow-jurors, spare jurors, witnesses, and spectators, swear that for a considerable part of the afternoon he was asleep or in a drunken stupor. The juror sitting next to him repeatedly nudged him to keep him awake.

When awake, Sisson acted in a foolish and childish manner, throwing bits of paper at other jurors, tapping and slapping the jurors sitting near him, and being absolutely inattentive to the testimony which was being introduced in the case at that time.

At the mid-afternoon recess he reeled and walked unsteadily out of the court house and went at once to a saloon near by. Soon after adjournment of court that evening, Sisson was on the street intoxicated, and asking for more drink, and boasting that the sheriff had told him to keep straight, and that he had replied to the sheriff, "Go to Hell."

Finally, it is the unanimous opinion of all these persons that, during the Monday afternoon session of the court, Sisson was

so intoxicated as to be unable to understand and weigh, intelligently and properly, the testimony which was put in at that time.

On Tuesday the court did not convene until two o'clock in the afternoon, and this fact had been announced by the court on the afternoon before. But Sisson was unable to comprehend even this simple instruction, for on Tuesday morning he was on the way to the court under the mistaken belief that it convened at 9:30 o'clock. In his talk on the electric car with a physician he stammered, used very profane language, and talked like one "under the influence of liquor." After the physician had informed him of his mistake, Sisson doubtless returned to Portsmouth, for in the afternoon he boarded a car at Island Park in Portsmouth, which was due to arrive in Newport at two o'clock. While riding on this car he had all the appearances of intoxication, sleeping part of the time with his head swaying back and forth, talking loudly and freely with a fellow-passenger, asking what he thought of the case and what would be a "fair price to give for old man Bailey's death," and, finally, stating that he was "going to soak the railroad company." He arrived at court somewhat late, "unsteady in his gait, and with eyes heavy and bleary," and clearly under the influence of liquor.

Then, Mr. Pirce, the attorney for the defendant, drew the attention of the court to the condition of Sisson, filed a motion that the case be taken from the jury because of such misconduct and offered evidence in support thereof. During the remainder of the afternoon Sisson was, according to some sixteen persons, including two jurors and two physicians, under the influence of liquor, acted to some extent the same as on the previous afternoon, slapped jurors, placed his feet upon the juror next to him, slept part of the afternoon, and paid but little attention to the testimony.

Even on Wednesday morning there were indications that he was still under the influence of liquor and probably suffering from the after-effects of intoxication.

(1)    We have, therefore, in this case, a mass of testimony to the effect that, for at least two days, a juror, during the progress of the trial was so much under the influence of liquor that he was asleep a large part of the time.  He so far lost his power of self-control as to be unable to walk steadily in and out of the jury-box, and by his foolish and childish actions, while testimony was being put in, revealed his own inattention and disturbed the jurors near him.  He was boisterous and profane in his language, and talked freely about the case with strangers during the court recesses.  According to a great number of witnesses, he was, during the court proceedings, so much ·intoxicated that it was impossible for him to understand and weigh intelligently the evidence that was introduced in the case.

The authorities are unanimous in recognizing the grave danger of the use of intoxicating liquor by jurors, and condemn in the strongest terms the indulgence in drinking by jurors while sitting in the trial of a case.  Some jurisdictions, especially Iowa and Texas, have held that the mere fact of drinking spirituous liquors by jurymen during the trial of a case, without regard to the quantity used or its effect, is sufficient ground for the granting of a new trial.  *Ryan* v. *Harrow,* 27 Iowa 494; *Jones* v. *The State,* 13 Texas, 168.

The great weight of authority, however, is in favor of the proposition that, if a juror, during the progress of the trial, drinks intoxicating liquor to such an extent that he is intoxicated or under the influence of liquor so that his faculties are affected, while sitting in the case, the verdict should be set aside.  *Perry* v. *Bailey,* 12 Kan. 539; *Hedican* v. *Pa. Fire Ins. Co.,* 21 Wash. 488; *Brown* v. *The State,* 137 Ind. 240; *State* v. *Ned,* 105 La. 696; *State* v. *Jenkins,* 116 No. Car. 972; *Davis* v. *Cook,* 9 Nev. 134; 17 Amer. & Eng. Encyc. Law, p. 1234.

*Perry* v. *Bailey, supra,* was a case in which two affidavits were filed, stating that one of the jurors, during the progress of the trial, had been under the influence of liquor.  The court held that, although the affidavits were not full and positive, yet it was clear that the juror had drunk so much as to unfit

him for the proper discharge of his duty, and consequently the verdict should be set aside. In the opinion, Judge Brewer, said, at page 546:

"We think however, the great weight of authority establishes these propositions: That if a juror during the progress of the trial drinks intoxicating liquor on the invitation and at the expense of the party who afterwards has the verdict, or if at his own expense he drinks so much as to be under the influence of the liquor while sitting in the case, the verdict ought not to stand; and on the other hand, the mere drinking of spirituous and intoxicating liquors by a juror during the progress of a trial is not, in and of itself, sufficient to set aside a verdict (authorities). Aware as all are of the subtle and potent influence of liquor on the brain, no judge should for a moment permit a trial to proceed where it appeared that any juror was under the influence of intoxicating drink, or permit a verdict to stand which was not the cool, deliberate judgment of sober men."

*Hedican* v. *Pa. Fire Ins. Co.*, *supra*, was a case where, during the trial at an evening session of the court and during the defendant's argument, a juror was intoxicated. This fact was brought to the attention of the court after the session was concluded and the court permitted counsel at the following morning session to make their arguments without limitation as to time. All the testimony had been put in before the juror became intoxicated, and this fact was urged against the motion for a new trial. The court held that a new trial must be granted because of the misconduct of the juror. The court said, at page 490:

"Parties are entitled to have a cause submitted only to sober jurors, and the court will not undertake an inquiry into the state or condition of mind of a juryman who has been intoxicated during the progress of a trial, but will assume that he was incompetent to determine the cause. Drunkenness during the progress of a trial is not only the gravest breach of a juryman's duty, but it is also a most serious contempt of the court and the administration of the law."

In *Brown* v. *The State, supra,* the court granted a new trial on the ground of intoxication of one of the jurors during the trial and at page 241 said;

"It seems to be well settled in this state as well as in other jurisdictions that drinking intoxicating liquor during the recess of the court is not such misconduct of the juror as vitiates the verdict, unless the drinking is to such an extent as to produce intoxication; but where a juror drinks to such an extent as to become intoxicated, such conduct renders the verdict invalid and the court, upon proof of such misconduct, should set it aside and grant a new trial."

In *Davis* v. *Cook, supra,* the court said, at page 147:

"In vindication of the character of courts and the purity of jury trials a verdict participated in by a jury-man with passions inflamed and reason impaired by ardent spirits should not be allowed to stand. Trial by jury regarded by our ancestors as the principal bulwark of their liberties and the glory of the English law, would degenerate into a mockery of justice if verdicts were capriciously determined by intoxicated jurors. The judgment must be reversed."

In *American & Eng. Ency. of Law, supra,* the law is stated to be as follows:

"If during the progress of the trial or during their deliberations on the verdict jurors partake of intoxicating liquors to such an extent as to affect their ability clearly, impartially and calmly to consider the evidence the verdict will be set aside; and the rule applies, it seems, where such an inordinate amount is drunk as to make a juror sick, or to render it probable that he was incapacitated."

(2)   In his rescript overruling the defendant's motion for a new trial, the trial justice stated that the defendant must be considered to have waived its right to object to the misconduct of Sisson on Monday afternoon of the trial because of the failure of the defendant's counsel to bring the matter to the attention of the court at that time. This, we think, is clearly too strict and harsh an application of the doctrine of waiver. The objection was urged immediately upon the convening of the court

on Tuesday, the earliest opportunity that counsel had after the adjournment on Monday afternoon.   Even if it be assumed that Mr. Pirce, counsel for the defendant, had knowledge on Monday afternoon that Sisson had been drinking, he, being busily engaged all of Monday afternoon in listening to and examining witnesses, could not well have seen all the actions of Sisson which now so clearly prove his intoxication.   The formation of a fair opinion as to whether or not a person is intoxicated requires considerable time even if one does nothing but watch for objective symptoms, especially when the person is sitting down as was Sisson on Monday afternoon.   In this case, we think it can not be fairly urged that defendant's counsel took an unreasonable time in investigating the misconduct of the juror and in reaching a conclusion as to what he should do with reference to the matter.   When he made his motion on Tuesday afternoon, he was convinced of Sisson's intoxication then and on the previous afternoon, and was ready with witnesses to prove it.   We think, therefore, that in this case there can be no presumption that the defendant waived all objection to the intoxication and other misconduct of Sisson on Monday afternoon of the trial, and that it can well be considered by the court in connection with his intoxicated condition on Tuesday.

As to the statements of Sisson in public places, during the trial, indicating an opinion on the merits of the case and prejudice against the defendant, the affidavits upon this point stand uncontradicted by Sisson.   In the two affidavits made by him he neither denies nor attempts to qualify said statements.

We think the evidence shows clearly that Sisson was in such a state of intoxication, during a great part of the trial, as to render him unfit to serve as a juror.

The defendant's 13th and 14th exceptions, and the 22nd exception to the denial of its motion for a new trial on the 6th and 7th grounds set out in said motion, are sustained.

The sustaining of these exceptions renders a consideration of the other exceptions, both of plaintiff and defendant unnecessary.

The cause is remanded to the Superior Court for a new trial.

*Harvey A. Baker, Waterman, Curran & Hunt,* for plaintiffs.

*Gardner, Pirce, and Thornley,* for defendant.

*William W. Moss. Charles R. Haslam,* of counsel.