## Case No. 9,052.

### MANUFACTURERS' NAT. BANK v. BAACK et al.

[8 Blatchf. 137; 2 Abb. U. S. 232; 4 Am. Law T. Rep. U. S. Cts. 24; 13 Int. Rev. Rec. 35, 101; 40 How. Pr. 409; 1 Thomp. Nat. Bank Cas. 161; 3 Chi. Leg. News, 169; 5 Am. Law Rev. 567.] [1]

Circuit Court, S. D. New York. Jan. 10, 1871.

FEDERAL COURTS—JURISDICTION—CITIZENSHIP—NATIONAL BANK—PRESUMPTION.

1. A banking corporation, incorporated under the act of June 3, 1864 (13 Stat. 101), and "located," under the provisions of that act, at Chicago, Illinois, can sue, in this court, a defendant who is a citizen of New York.

2. An allegation in a bill in a suit in equity brought in this court by such corporation, as plaintiff, that it is "a citizen of the state of Illinois, and located and residing and doing business in the city of Chicago, in said state," and that the defendant is a citizen of New York, is sufficient, under the 11th section of the act of September 24, 1789 (1 Stat. 78), to give this court jurisdiction of the suit.

[Cited in Cadle v. Tracy, Case No. 2,279. Approved in Main v. Second Nat. Bank. Id. 8,976. Cited in St. Louis Nat. Bank v. Allen, 5 Fed. 555; Orange Nat. Bank v. Traver, 7 Fed. 149; Hughes v. Northern Pac. Ry. Co., 18 Fed. 111.]

[Cited in brief in Cooke v. State Nat. Bank, 52 N. Y. 111.]

[This was a bill in equity by the Manufacturers' National Bank of Chicago against Edward Baack and Edward Baack, Jr. Heard on an application for an injunction and receiver.]

Francis C. Barlow, for plaintiffs.

Clarence A. Seward and Pierre C. Talman, for defendants.

BLATCHFORD, District Judge. The bill in this case describes the plaintiffs as "The Manufacturers' National Bank, of Chicago, Illinois, a banking corporation, incorporated and existing under and by virtue of an act of the congress of the United States, entitled 'An act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,' approved June 3, 1864, and

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Benjamin Vaughan Abbott, Esq., and here reprinted by permission. 5 Am. Law Rev. 567, contains only a partial report.]

having capacity to sue by the above title, and a citizen of the state of Illinois, and located and residing and doing business in the city of Chicago, in said state." It describes the defendants as citizens of the state of New York. The allegations of the bill as to the incorporation and location of the plaintiffs are admitted by stipulation. The plaintiffs move for an injunction and the appointment of a receiver in the case, and the question arises, whether, on the allegations of the bill, thus admitted, with the fact that the allegation of the bill as to the citizenship of the defendants is not denied by the answers, this court has jurisdiction of the suit.

The 8th section of the act of June 3, 1864 (13 Stat. 101), under which the plaintiffs are incorporated, provides, that every association formed pursuant to the provisions of the act shall be a body corporate, and may have a corporate seal, and shall have succession by the name designated in its organization certificate, and may, by such name, "sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons." The effect of this provision is not to give to the corporation the right to sue, or the capacity to be sued, in every court within the United States, whether state or federal, or to give to every such court jurisdiction over every suit which may be brought in it, wherein the corporation is plaintiff or defendant. Its only proper effect is, to provide that the corporation, when it has come, or been brought, as a suitor, into a court which has jurisdiction of the suit, shall stand in court, in all respects, in the same position, as regards its own rights or the rights of others against it, as to the subject matter of the suit, in which a natural person, who is a suitor in such court, can stand. The question, as to the proper court in which the suit is to be brought, in respect of jurisdiction, is left to be determined by other provisions of law. If a natural person had brought this suit, in this court, against the defendants, as citizens of New York, he would have been obliged to aver himself to be a citizen of some state other than New York, the bill being what is known as a "creditor's bill," founded on a judgment at law, and praying for equitable relief. Therefore, so far as the provisions of section 8 of the act are concerned, the plaintiffs must show, by the averments of their bill, jurisdiction of this suit by this court, by showing proper citizenship in the parties.

There is no other provision of the act, which can be cited as giving to this court jurisdiction of this suit. The 57th section, even if, under the dictum of Mr. Justice Swayne, in Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, 506, it be held to refer to suits by national banks as well as to suits against them, relates only to suits to be brought in courts of the United States held within the district in which the bank is established, and does not affect the question of the jurisdic-

tion of this court in this suit. Such jurisdiction, in order to be sustained, must, therefore, appear, by the averments of the bill, to be brought within that provision of the 11th section of the judiciary act of September 24, 1789 (1 Stat. 78), which gives to this court original cognizance of all suits of a civil nature, in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and the suit is between a citizen of the state where the suit is brought and a citizen of another state.

The averment in the bill, that the plaintiff corporation is a citizen of the state of Illinois, is, in and of itself, not sufficient to show jurisdiction, as a corporation cannot be a citizen of a state, in the sense in which that word is used in the constitution of the United States. Lafayette Ins. Co. v. French, 18 How. [59 U. S.] 404; Covington Drawbridge Co. v. Shepherd, 20 How. [61 U. S.] 227, 233, 234. The substance of the averments in the bill in regard to the status of the plaintiffs is, that they are a banking corporation, incorporated under the act of congress named; that their members are authorized to sue by the title given to the corporation; that the corporation is located and does business at Chicago, in the state of Illinois; and that, therefore, the real plaintiffs, the members of the corporation, must be regarded, on such averments, as citizens of the state of Illinois.

The various decisions of the supreme court in cases of suits in the federal courts by and against corporations created by the laws of the states, where the jurisdiction depended on the citizenship of the parties to the suit, are reviewed in the opinion given by that court in the case of Ohio & M. R. Co. v. Wheeler, 1 Black. [66 U. S.] 286. The law is there stated to be settled, that, where a corporation is created by the laws of a state, the legal presumption is, that its members are citizens of such state; that a suit by or against such corporation in its corporate name must be presumed to be a suit by or against citizens of the state which created the corporation; and that no averment or evidence to the contrary is admissible, for the purpose of withdrawing the suit from the jurisdiction of a court of the United States. In the case of Cowles v. Mercer Co., 7 Wall. [74 U. S.] 118, 121, the rule is thus stated: "A corporation created by the laws of a state, and having its place of business within that state, must, for the purposes of suit, be regarded as a citizen, within the meaning of the constitution giving jurisdiction founded upon citizenship." This rule, however, does not, ex vi termini, cover the case of a corporation created by an act of congress.

The argument urged against a jurisdiction in this case drawn from citizenship is, that, as the corporation is created by the United States, the only legal presumption that can be drawn is, that its members are citizens of the United States; and that there is no presumption that they are citizens of the state in which the corporation is located.

With a view to the consideration of the question raised, it will be necessary to examine the statutory provisions in respect to the location of banking associations. The 6th section of the act of 1864, provides, that the organization certificate of every association for carrying on the business of banking, formed under the act, (and which, by the execution of such certificate, becomes, under the 8th section, a body corporate,) shall specify the place where the operations of discount and deposit of the association are to be carried on, designating the state, territory, or district, and also the particular county and city, town or village. The 44th section, provides, that any bank incorporated or organized under a law of a state may, by authority of such act of congress, become a national association, under the provisions of such act, by the name prescribed in an organization certificate, such as is required by such act, to be executed by a majority of its directors, the certificate declaring that the owners of two-thirds of the capital stock have authorized the directors to make such certificate, and "to change and convert the said bank or banking institution into a national association under this act;" and that, on a compliance with certain provisions prescribed in that section, the association shall be held and regarded as an association under the act. There is, therefore, no difference, in regard to its status, between an association formed under the act and one converted into a national association under the act. In each case, it must be regarded as holding its corporate existence under and by virtue of the act.

What, then, are the consequences of the fixing of place provided for in the 6th section? The 8th section provides, that the usual business of the association shall be transacted at an office or banking house "located" at the place specified in its organization certificate. The 9th section, provides, that at least three-fourths of the directors shall have resided in the state in which the association is "located," one year next preceding their election as directors, and be residents of the same during their continuance in office. The 10th, 15th, 18th, and 42d sections, speak of the association as being "located" in a city, town or county. The 30th section, speaks of the laws of the state where the bank is "located." The 34th section, speaks of the place where the association is "established." The 41st section speaks of taxes imposed "by or under state authority at the place where such bank is located." The word "place," in this 41st section, is declared, by the act of February 10, 1868 (15 Stat. 34), to mean, "the state within which the bank is located." This act of 1868, also provides, that the legislature of each state may determine and direct the manner and place of taxing all the shares

of national banks "located" within said state, and that the shares of any national bank owned by non-residents of any state shall be taxed in the city or town where such bank is "located." The 50th section of the act of 1864 provides, that an association may apply to the "nearest" circuit, or district or territorial court of the United States, in certain cases, to enjoin the comptroller of the currency. The 57th section, provides, that suits, actions and proceedings against any association under the act may be had in any circuit, district or territorial court of the United States held within the district in which the association may be "established," or in any state, county or municipal court in the county or city in which the association is "located," having jurisdiction in similar cases, provided that all proceedings to enjoin the comptroller under the act shall be had in a circuit, district or territorial court of the United States held in the district in which the association is "located."

The 21st section of the act of 1864, as amended by the act of March 3, 1865 (13 Stat. 498), provides, that, of the three hundred millions of dollars of circulating notes authorized to be issued, one hundred and fifty millions of dollars shall be apportioned to associations in the states, in the District of Columbia, and in the territories, according to representative population; and that the remainder shall be apportioned by the secretary of the treasury among associations formed in the several states, in the District of Columbia and in the territories, having due regard to the existing banking capital, resources and business of such states, districts and territories. The act of July 12, 1870 (16 Stat. 251), provides (section 1), that fifty four millions of dollars in notes for circulation may be issued to national banking associations, in addition to the three hundred millions of dollars, and shall be furnished to banking associations organized or to be organized in those states and territories having less than their proportion under the apportionment contemplated by the act of 1865, before referred to, and that a new apportionment of such increased circulation shall be made as soon as practicable, based upon the census of 1870. The 6th section of the act of 1870, provides for "a more equitable distribution" of the national banking currency, by withdrawing circulating notes from banking associations organized in states having a circulation exceeding that provided for by the act of 1865, and issuing a like amount of notes to banking associations organized in states and territories having less than their proportion, the intention being, as declared by the section, that "the circulation so withdrawn shall be distributed among the states and territories having less than their proportion, so as to equalize the same." The 7th section of the act of 1870, provides, that, after the

12th of January, 1871, any banking association "located" in any state having more than its proportion of circulation may be removed to any state having less than its proportion of circulation, under such rules and regulations as the comptroller of the currency, with the approval of the secretary of the treasury may require.

It is quite apparent, from all these statutory provisions, that congress regards a national banking association as being "located" at the place specified in its organization certificate. If such place is a place in a state, the association is located in the state. It is, indeed, located at but one place in the state, but, when it is so located, it is regarded as located in the state. The requirement, that at least three fourths of the directors of the association shall be residents, during their continuance in office, in the state in which the association is located, especially indicates an intention on the part of congress to regard the association as belonging to such state. Three-fourths of the legal representatives of the unknown associates forming the corporation, with which representatives any person dealing with the corporation must deal, are required to reside in the state where the corporation is "located." The reasons so forcibly stated in the opinion of the court in the case of Marshall v. Baltimore & O. R. Co., 21 How. [62 U. S.] 314, 326–329, why a grant of power by competent authority to certain associated persons to act by representatives and to sue and be sued in a collective or corporate name, should not be allowed to prejudice any right of those dealing with such persons, apply as fully·to the case of a bank created by federal authority and located in a particular state, as to one created by state authority and located in the state which created it. The view taken by the court in that case was, that the persons using the corporate name of a corporation created by a state may be justly presumed to be resident in the state which is the necessary habitat of the corporation; that the presumption arising from the habitat of a corporation created by a state in the place of its creation, is conclusive as to the residence or citizenship of those who use the corporate name, and exercise the faculties conferred by it; that the right of choosing an impartial tribunal is a privilege of no small practical importance, and more especially in cases where a distant plaintiff has to contend with the power and influence of great numbers, and the combined wealth wielded by corporations in almost every state; and that it is of importance, also, to corporations themselves, that they should enjoy the same privileges in other states, where local prejudices or jealousy might injuriously affect them. The principle has been settled ever since the case of Louisville R. Co. v. Letson, 2 How. [43 U. S.] 497, that, where a corporation is created by the laws of a state, the legal pre-

sumption is that its members are citizens of such state. Where a corporation is created by competent authority—authority as competent, within a given state, to create such corporation and to locate it in such state, as is the state itself—and a location and habitat within such state, and not elsewhere, is given by the creating authority, to such corporation, there is no reason why the legal presumption should not be that the members of such corporation are citizens of such state, within the meaning of the 2d section of the 3d article of the constitution, and of the 11th section of the judiciary act of 1789. The presumption, in the case of a corporation created by a state, is only arrived at by presuming the members of the corporation to be citizens of the United States, and to be residents in the state, and, therefore, under the decision in Gassies v. Ballon, 6 Pet. [31 U. S.] 761, citizens of the state. The members of a corporation created by the United States, and located in a particular state, in the manner and to the extent in which national banking associations are located in particular states, may as properly be presumed to be citizens of the United States and residents in the state where the corporation is located, so as thereby to be citizens of such state, as the members of a corporation created by a state may be presumed to be citizens of the United States, and residents in the state creating it, and in which it is located, and, therefore, citizens of such state.

But, it is urged that the legislation of congress shows an intention not to confer upon national banking associations the right to sue in the federal courts. The first national banking law was passed February 25, 1863 (12 Stat. 665), and was repealed by the 62d section of the act of June 3, 1864. The 59th section of the act of 1863, provided, that "suits, actions and proceedings by and against any association under this act may be had in any circuit, district or territorial court of the United States, held within the district in which such association may be established." The corresponding section, the 57th, of the act of 1864, provides, that "suits, actions and proceedings against any association under this act may be had in any circuit, district or territorial court of the United States, held within the district in which such association may be established, or in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases." It is urged that this legislation indicates an intention that national banking associations shall not come into the federal courts as plaintiffs, although they may be brought into those courts as defendants. But, independently of the view taken of the 57th section of the act of 1864, in the opinion given by Mr. Justice Swayne in the case of Kennedy v. Gibson, before cited, it

may well be said, that the object of that section is to enable a suit to be brought against a bank in any federal court held in the district where the bank is established, without reference to the citizenship of the plaintiff in the suit. Under the decision in the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738, such a suit is a case arising under a law of the United States, within the meaning of the constitution, the bank being incorporated by a law of the United States, and it is competent for congress to confer jurisdiction over it on the federal courts. But, the jurisdiction is expressly confined, by the 57th section, to suits brought in a federal court held in the district where the bank is established. Under it, however, these plaintiffs, a national bank, could bring a suit in this court against a national bank established in this district. The section embraces any plaintiff who has capacity to sue at all in any court. If these plaintiffs can sue another national bank in this court, it is difficult to see why they should not be allowed to sue in this court defendants who are citizens of New York. I can perceive no evidence, in the legislation referred to, that congress intended that this court should not assume the jurisdiction invoked in this suit.

So, too, the provision in the 2d section of the act of July 27, 1868 (15 Stat. 227), withholding from banking corporations organized under a law of the United States, the privilege conferred by that act on other corporations organized under a law of the United States, of removing into a federal court certain suits brought against it, cannot be regarded as affecting the question of original jurisdiction involved in this case.

I am, therefore, satisfied, that the averments of the bill are sufficient to show jurisdiction, and that this court has jurisdiction of this suit. On the merits, the plaintiffs are entitled to the receiverships and the injunction asked for in their notice of motion, so far as concerns the property specified in the first and second clauses of such notice; but, inasmuch as such property exceeds the amount of the plaintiffs' claim, the receiverships and injunction will be discharged on the furnishing to the plaintiffs of satisfactory security for the payment of their claim, if they shall recover in the suit. An order will be settled, on notice, embodying proper provisions.

MANUFACTURERS' NAT. BANK (IRONS v.). See Case No. 7,068.

MANUFACTURERS' NAT. BANK (SMITH v.). See Case No. 9,051.

MANUFACTURING CO. (BLANK v.). See Case No. 1,532.

MANUFACTURING CO. (THOMPSON v.). See Case No. 13,967.

MANWARING (L'ARINA v.). See Case No. 8,089.