MARY E. RAIOLA, Doing Business under the Firm Name and Style of AMERICAN AND BRITISH TRAVELERS CLUB, Plaintiff, *v.* LOS ANGELES FIRST NATIONAL TRUST AND SAVINGS BANK, Defendant.

City Court of New York, New York County, February 25, 1929.

*Simpson, Thacher & Bartlett [Louis Connick* and *Whitney North Seymour* of counsel], for the plaintiff.·

*White & Case [Chester Bordeau* of counsel], for the defendant.

NOONAN, J. The defendant appears specially and moves to vacate the service of the summons upon the defendant. The summons was served in the city of New York, borough of Manhattan, upon one Paul K. Yost, who at the time of service was admittedly a vice-president of the defendant bank. The defendant is a National bank created under the laws of the United States, with its principal place of business in Los Angeles, Cal. The action is on a draft drawn on the defendant in favor of the plaintiff by one J. F. Walton, who was the holder of a letter of credit issued by the defendant. The motion is based on two grounds. The first contention is that the defendant, being a National banking institution, cannot be sued in any other place than in Los Angeles, Cal., where its banking house is located. The basis for this contention is section 94 of the United States Code (Tit. 12, chap. 2, National Banks), which reads as follows: " Actions and proceedings against any association under this chapter may be had in any district or terriorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases." This section was formerly the last sentence of section 5198 of the United States Revised Statutes and was derived from the act of February 18, 1875, chapter 80, section 1 (18 Stat. 320). The first part of section 5198 of the Revised Statutes is now section 86 of the United States Code (Tit. 12, chap. 2, National Banks) and provides that any person who has paid usurious interest to a National banking institution may recover twice the amount of the interest paid. The location of a National banking association is the place specified in its organization certificate. (U. S. Code, tit. 12, § 22; *Manufacturers' Nat. Bank* v. *Baack,* 8 Blatchf. 137; *Davis* v. *Cook,* 9 Nev. 134.) In *Manufacturers' Nat. Bank* v. *Baack (supra)* Judge BLATCHFORD said: " It is quite apparent, from all these statutory provisions, that Congress regards a National banking

association as being 'located' at the place specified in its organization certificate." The cases in the United States Supreme Court passing on the question as to where a National bank must be sued are few in number and, it must be said, leave the solution in somewhat an unsettled state. In *Charlotte National Bank* v. *Morgan* (132 U. S. 141) an action was brought to recover interest alleged to have been usuriously exacted, based upon the first part of section 5198 of the United States Revised Statutes (now U. S. Code, § 86). The court said (p. 145): "This exemption of National banking associations from suits in State courts, established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from State courts (*Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383, 394; *Crocker* v. *Marine National Bank*, 101 Mass. 240). But, without indulging in conjecture as to the object of the exemption in question, it is sufficient that it was granted by Congress, and, if it had been claimed by the defendant when appearing in the Superior Court of Cleveland county, must have been recognized. The defendant did not, however, choose to claim immunity from suit in that court." The question was not squarely passed upon in the *Charlotte* case, as it was held that the defendant having made its defense on the merits waived any right to insist that the action against it be brought in the county or city in which it was located. In the case of *Bank of Bethel* v. *Pahquioque Bank* (81 U. S. [14 Wall.] 383) the court held that State courts in which the action is properly brought had concurrent jurisdiction over National banks. It so happened in that case that the action was brought in a State court of the district where the bank was located, the court in this connection saying: "Commenced, as the action was, in the proper court of the State where the association is located and in a court having jurisdiction in similar cases, which is not denied, it is quite clear that the objection to the jurisdiction of the court founded upon the character of the association as an instrument of the National government, must be overruled." It is evident that the question was not directly involved in the *Bank of Bethel* case. In the *Charlotte* case *Crocker* v. *Marine National Bank* (101 Mass. 240) was cited. In the *Crocker* case the actions were based on contract and tort and the nature of the action was purely transitory, the same as in the case at bar. Suit was brought in the Commonwealth of Massachusetts against a banking institution located in the city of New York on a claim arising outside of the Commonwealth. The court said: "This section manifests

the intention of Congress that each of these associations should be sued, either in the Federal or in the State courts, only in the judicial district in which it is established, and in which its officers may be summoned and its books brought into court with the least interruption and inconvenience of its business; and that the election of plaintiffs to sue in any court whatever should be confined within these limits in all cases." The section mentioned in that case was section 57 (act of June 3, 1864, chap. 106) which contains similar language to section 94 of the United States Code. The Massachusetts court squarely decided that an action against a National bank must be brought in the place where its bank is located. In the *Charlotte* case the Supreme Court of the United States gave clear intimation that it would follow the construction adopted by the Massachusetts court. On December 7, 1925, the laws of the United States were codified and the codification was enacted by Congress on June 28, 1926, and was approved on June 30, 1926, as "The Code of the Laws of the United States of America" (44 U. S. Stat. at Large, pt. 1). In 1923, a few years previous to the enactment of the United States Code, the case of *Bank of America* v. *Whitney Bank* (261 U. S. 171) arose in the United States Supreme Court. In that case service of process was made upon the president of the defendant while temporarily in New York, the defendant being a National bank located in New Orleans, La., and the question was presented whether the defendant bank was doing business in the State of New York. In deciding that the Whitney bank was not doing business in the State so as to subject it to service of process, the court, by Mr. Justice BRANDEIS, said: " Whether a National bank could under any circumstances be subjected, without its consent, to suit in a State or district, other than that in which it is authorized to locate its banking house, we have no occasion to consider in this case." In a footnote to this part of his opinion Mr. Justice BRANDEIS referred to section 5198 of the Revised Statutes and to the case of *Charlotte National Bank* v. *Morgan (supra)*. I think this reference of Mr. Justice BRANDEIS must be taken to mean that if the question of the proper place in which a National bank must be sued had been presented in the case the *Charlotte* case would have been followed. In 1873 the case of *Cadle* v. *Tracy* (11 Blatchf. 101) was decided in the Circuit Court of the Federal District of New York and Judge BLATCHFORD held that a National bank must be sued in a court of the district where it is located. I have not overlooked the point that the courts of New York have passed on the question here involved. In *Cooke* v. *State National Bank of Boston* (52 N. Y. 96), *Robinson* v. *National Bank of Newberne* (81 id. 385) and *Talmage* v. *Third National*

*Bank of City of N. Y.* (91 id. 531) the Court of Appeals of this State had occasion to construe enactments of Congress from which section 94 of the present United States Code was derived. In the first case section 57 of the act of June 3, 1864 (13 U. S. Stat. at Large, 99) and in the last two cases mentioned the last sentence of section 5198 of the Revised Statutes (U. S. Code, now § 94) were presented for construction. The Court of Appeals held that the language of the statute was permissive and that a National bank may be sued in a locality other than where its banking house is located. These cases were decided before the decision in the case of *Charlotte National Bank* v. *Morgan (supra)* and are directly in conflict with the case of *Crocker* v. *Marine National Bank (supra),* the Massachusetts decision relied upon in the *Charlotte* case. The Federal cases which have been discussed hold that the language of the section is mandatory and that in a proper case an action against a National bank must be instituted in a court where it is located. Morse in his work on Banks and Banking (6th ed., vol. 2, p. 1922) states that the New York cases are contrary to the construction adopted by the United States Supreme Court. He says: "It has been held in New York that section 57 of the Act of 1864 does not modify or control section 8, and that consequently a National bank may be sued in the State courts of a State other than that in which it is situated. This, however, cannot be considered to be the law, inasmuch as the Supreme Court of the United States has asserted the contrary doctrine." Where the meaning of a Federal statute is to be ascertained the decisions of the Federal courts construing the statute are controlling on the State courts. (*Frank* v. *Mercantile National Bank,* 182 N. Y. 264, 268.) It is my opinion that the first ground of the motion is well founded and that this court has no jurisdiction over the defendant. I think also that the motion must be granted for the other reason advanced by the defendant. Assuming that the defendant might be sued here, there is no clear proof that it is doing business in this State. The plaintiff is a resident of Italy. Section 47 of the General Corporation Law (added by Laws of 1920, chap. 916) permits a non-resident plaintiff to sue in this State a foreign corporation which does business in the State. Unless the defendant's corporate activities are such that it was doing business here the non-resident plaintiff cannot maintain an action against it in the courts of this State. On the argument it was suggested that a hearing be held to ascertain the exact nature of the defendant's business activities in the State. Counsel for both parties, however, agreed that such a hearing was unnecessary, since it was stated that the papers on the motion contained all the facts in relation to the defendant's business in the State.

From these papers it appears that Paul K. Yost, upon whom the summons was served, was made a vice-president of the defendant on February 20, 1928, and has been in New York on its behalf as such vice-president since March, 1928. In the *Wall Street Journal* of April 14, 1928, a notice appeared that the Los Angeles First National Bank would open a New York office at 52 Wall street on May first in conjunction with First Securities Company, its subsidiary, and that Paul K. Yost, vice-president, would be in charge. The cumulative supplement of Poor's Manual for April, May and June, 1928, contained a similar notice. The office mentioned, consisting of three rooms, was opened at No. 52 Wall street, was equipped with office furniture purchased by the defendant, and Mr. Yost was in charge, assisted by a stenographer. The rent of the office and the salary of the stenographer were paid by the defendant. The directory of the building at No. 52 Wall street bore the name of the defendant and indicated the location of its office and that it was the "Office of New York Repr." The door of the office advertised the fact that it was occupied by the defendant and had on it the additional inscription, "New York Representative, Paul K. Yost, Vice-President." In the New York Telephone Directory appears the following: "Los Angeles First Nat'l Trust & Savings Bk. Off. N. Y. Repr., 52 Wall. Bowl. Grn. 9831." The defendant maintains in the city of New York five bank accounts with five different banks and trust companies, but counsel for the defendant stated on the argument that these were five correspondent banks of the defendant. In the affidavit of Mr. Yost submitted in opposition to the motion he makes the following statement: "All that I have done substantially in behalf of the defendant since that time (May, 1928) has been to make courtesy calls upon customers of the defendant located in the eastern part of the United States and discussing with them the possibilities of obtaining additional business from them, soliciting new business from prospective customers and gathering information. In this connection I have explained to them the facilities that are available in the defendant bank." There is no proof that the defendant bank at its New York office receives deposits, cashes checks, makes loans or receives the repayment of loans, issues letters of credit or makes any collections. Nor is there any proof that any liabilities of any kind on behalf of the defendant are contracted beyond the payment of office expenditures such as rent and the salary of the stenographer. In my opinion it would be profitless to discuss the many decisions as to what constitutes the doing of business by a foreign corporation within the confines of this State. It would be difficult to reconcile these cases. The leading case of

*Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259) states the rule succinctly as follows: "We are to say, not whether the business is such that the corporation may be prevented from being here, but whether its business is such that it is here. If in fact it is here, if it is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts." To what extent must a corporation perform its business activities in the State for the court to say that it is doing business within the State? It is recognized that no precise rule can be laid down, but that each case must be decided on its own facts. This much can be said: that the business done in the State by the foreign corporation must be related to its main business and be a substantial part of it. (*Holzer* v. *Dodge Brothers,* 233 N. Y. 216; *Pomeroy* v. *Hocking Valley R. Co.,* 218 id. 530.) The main business of the defendant is a banking business, which is defined by the 7th paragraph or subdivision of section 24 of the United States Code (Tit. 12, chap. 2) as the discounting and negotiating of promissory notes, drafts, bills of exchange and other evidences of debt, the receiving of deposits, the buying and selling of exchange, coin and bullion, the loaning of money on personal security and the obtaining, issuing and circulating of notes. The defendant performed none of these banking functions in this State. All that the defendant did was to solicit business and to gather information, presumably credit information, and for this purpose maintained an office. The maintenance of an office in itself does not establish the doing of business. (*International Fuel & Iron Corp.* v. *Donner Steel Co.,* 242 N. Y. 224, 229.) Nor does the solicitation of business apart from other activities indicate that the defendant was engaged in business here. (*Lillibridge, Inc.,* v. *Johnson Bronze Co.,* 247 N. Y. 548; *Green* v. *Chicago, Burlington & Quincy R. Co.,* 205 U. S. 530.) The only other act was the gathering of information. This activity as well as the solicitation of business was no doubt helpful to the bank's business and was incidental to it, but in my opinion constituted no part of its main business. The question is not free from doubt, but I think the defendant could come here for the purposes stated by its vice-president without leaving itself open to service of process. The motion is granted and the service of the summons is vacated. Order filed.