Irving H. Saypol, J.
Plaintiff, a resident assignee of foreign nationals, sues defendant, a bank created by special law decree of the Republic of Argentina in 1944, for damages in excess of $85,000,000. The action is for breach of six agreements executed in 1948 under which defendant promised to establish irrevocable letters of credit in Italy for almost $24,000,000 in favor of plaintiff’s assignor, one Oronda, to enable him to set up in Argentina an industrial complex to import into Argentina aluminum ingots and sheets for processing and fabricating.
Proceedings commenced on January 15, 1962, by warrant of attachment, pursuant to which levies were made upon credits of $241,000 in defendant’s name in several New York banks. On February 9, 1962, copies of the summons and complaint were served in New York City on the fortuitously present defendant’s general counsel and on another person whose duties are described by plaintiff as those of a vice-president and “ at the very least, an assistant secretary,” and'by defendant as those of an assistant to the general manager. These officials had come to New York from Argentina to assist in the defense of the action.
Appearing specially, defendant moved to vacate the personal service of process on the grounds that (1) it has never engaged in business in the State of New York and is therefore not sub *130 ject to the jurisdiction of the New York courts, and (2) that the summons and complaint were not delivered to a proper person in accordance with section 229 of the Civil Practice Act. Further appearing specially, defendant a short while later also moved, pursuant to sections 237-a and 948 of the Civil Practice Act, to vacate the warrant of attachment on the grounds that the claims have been released, and that ‘ ‘ defendant, as an instrumentality of the Republic of Argentina, and its property,” are immune from suit and attachment.
A third motion raising the latter question of sovereign immunity was made in behalf of the Republic of Argentina by its embassy. That motion was withdrawn upon advice from the Department of State of its declination to recognize the immunity of the defendant because the activities ‘1 of the Bank which are the basis of the suit must be regarded as acts of a private nature, jure gestionis, regardless of the relationship of the Bank to the Government of Argentina.” That, at least on the basis of the submission alone, is dispositive of this same ground raised by the defendant as one of its grounds for vacating the attachment. Both remaining motions are considered together.
As to the first motion involving its claim of immunity from process, lack of jurisdiction because it is not present here, defendant contends that Bank of America v. Whitney Bank (261 U. S. 171) decided in 1923, is decisive. Plaintiff, on the other hand, maintains that decisions of the United States Supreme Court since 1945 (International Shoe Co. v. Washington, 326 U. S. 310; McGee v. International Life Ins. Co., 355 U. S. 220; Travelers Health Assn. v. Virginia, 339 U. S. 643; Perkins v. Benguet Mining Co., 342 U. S. 437; cf. Hanson v. Denckla, 357 U. S. 235) have enunciated a more liberal rule of amenability to process and have overruled Bank of America with its 11 now discarded principles.”
In Bank of America it was held that the maintenance of a relationship by a national bank, having its banking house and usual place of business in New Orleans, Louisiana, with correspondent banks in New York did not constitute doing business so as to subject it to process in New York. Justice Brandéis described the activities of these local correspondent banks as follows (pp. 172-173): “ Each of these six [New York] banks is, what is commonly called, a correspondent of the defendant. In each the Whitney Central carries continuously an active, regular deposit account. But its transactions with these banks are not limited to making deposits and drawing against them. _ Superimposed upon the simple relation of bank and depositor are numerous other transactions which necessarily involve also the *131 relationship of principal and agent. These additional transactions conducted by the correspondent banks include: payment in New York of drafts drawn, with accompanying documents, against letters of credit issued by defendant at New Orleans; the receipt in New York from brokers and others of securities in which the Whitney Central or its depositors are interested, and the delivery of such securities; the making of payment to persons in New York for such securities; the holding of such securities on deposit in New York for long periods and arranging substitution of securities; the cashing, under specific instructions from defendant given in New Orleans, of checks drawn on it by third parties with whom it had no banking or deposit relations; the receipt in New York from third parties, with whom defendant apparently had no banking relations, of deposits of moneys for account of its customers.” The Supreme Court unanimously held that regular New York business was being done by the correspondent banks, not by the defendant.
If Bank of America is still the law of New York, the activities of the defendant in the instant case, so similar to those of Whitney Central National Bank therein, are without significance and there is here no in personam jurisdiction.
In International Shoe Co. v. Washington (326 U. S. 310, supra) it was held that a State could bring suit in its courts against a foreign corporation not “ doing business ” therein to recover unpaid contributions for unemployment insurance of its local employees. The court declared (p. 316) that “ due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice.’ ” In holding constitutional a California statute subjecting foreign corporations to suit in California on insurance contracts with its residents even though such corporations could not be served with process within the State, the court in McGee v. International Life Ins. Co. (355 U. S. 220, 222, supra), stated: “In a continuing process of evolution this Court accepted and then abandoned ‘ consent, ’ ‘ doing business,’ and 1 presence ’ as the standard for measuring the extent of state judicial power over such corporations.”
Assuming that the due process standard of “ minimum contacts ” enunciated in International Shoe and McGee (supra) has rendered obsolete the traditional “ doing business in the state ” formula applied in Bank of America (supra) insofar as what the Federal Constitution allows a State to do, the basic question persists: to what extent have the courts of New York (absent *132 amendatory legislation) acted to equate the two tests or formulae? It has been noted that the New York Court of Appeals has not yet adopted the International Shoe test despite frequent citation of the case itself (see Peterfreund, Civil Practice, 34 N. Y. U. L. Rev. 1563, 1570; Peterfreund and Schneider, Civil Practice, 33 N. Y. U. L. Rev. 1263,1269 — 1270; Peterfreund, Civil Practice, 36 N. Y. U. L. Rev. 1561, 1566). In Pine & Co. v. McConnell (298 N. Y. 27, 30) decided in 1948, that court said: “It is unnecessary, at this time, to say whether and to what extent that [“ doing business ”] test may be relaxed in reliance upon the constitutional principles recently announced by the Supreme Court in International Shoe Co. v. Washington (326 U. S. 310).”
In his inimitable way, the late Judge Learned Hand pointed out early in 1948 the two facets of the essential question: (1) how far may the courts go under the new, liberalized test of International Shoe; and (2) how far will they go. “ [W]e hesitate to say that the New York courts will occupy the new enclave, now opened to them by International Shoe Co. v. Washington, supra; and, until they do, we see no other course but to compare the facts in the case at bar with those which existed in the bellwether decisions of the state, and to appraise — a more candid word would be to guess at — the importance of any differences ” (Bomze v. Nardis Sportswear, 165 F. 2d 33, 36).
That a dichotomy still exists in this jurisdiction between the constitutionally permissible standard enunciated in International Shoe and the traditional “ doing business ” or “ presence ” test (Tauza v. Susquehanna Coal Co., 220 N. Y. 259, and as exemplified by Bank of America v. Whitney Bank, 261 U. S. 171, supra), has been noted in several authoritative decisions (Ames v. Senco Products, 1 AD 2d 658, motion for leave to appeal granted 1 A D 2d 774; Martino v. Golden Gift, 4 A D 2d 694, appeal dismissed 5 NY 2d 982; Fremay v. Modern Plastic Mach. Corp., 15 A D 2d 235; Streifer v. Cabol Enterprises Ltd., 35 Misc 2d 1049). In Fremay, Breitel, J., said (pp. 239-240): “In Ames v. Senco Prods. (1 A D 2d 658) this court said: ‘ While it is true that the limitation on service of process on foreign corporations has been lifted to a considerable extent by the United States Supreme Court in International Shoe Go. v. Washington (326 U. S. 310), the settled rule as to the extent or exercise of our jurisdiction in this State has not been changed. Moreover, there are policy considerations which suggest that any change should be effected by legislation rather than by judicial decision. In that way, circumstances affecting the convenience of commerce may be more generally considered. The statute adopted would provide *133 wider notice to those, “ not doing business within the state ” who, nevertheless, may have occasion to enter the state for the purpose of making contracts here, or having them performed here. ’ This would seem to be still applicable. In short, while it is now clear that under constitutional due process principles the Legislature can today broaden the classes of actions in which a foreign corporation may be sued locally, the New York statutes have not generally been so extended. In a commercial and banking community such as New York City the distinctions may not be blurred and even for legislative action the economic impact of any changes would be carefully weighed.” He concluded (p. 240): “ [T]he applicable test as to whether defendant corporation does business within the State of New York is the classic ‘ presence test,’ as found in the leading cases (e.g., Tausa v. Susquehanna Coal Co., 220 N. Y. 259).” (See, also, Simonson v. International Bank, 16 A D 2d 55, 57; Zucker v. Baker, 35 Misc 2d 841, 842; cf. International Business Mach. Corp. v. Barrett Division Allied Chem. & Dye Corp., 16 A D 2d 487.) That policy considerations should give pause before expanding traditional concepts of doing business in New York City is likewise commented upon in Trizna v. New York, Chicago & St. Louis R. R. Co. (57 F. Supp. 484 [Rifkind, J.]).
I am cognizant that even with the differences between the due process test of International Shoe and the “doing business ” test, there has in some instances been a broadening of the concept of “ doing business,” so that while the newer approach is used or referred to, the result may be consistent with precedent (cf. Berner v. United Airlines, 3 A D 2d 9,13; Singer v. Walker, 32 Misc 2d 782, 784; Schwarts v. Breakers Hotel Corp., 13 Misc 2d 508, 512; Ackert v. Ausman, 29 Misc 2d 971).
In light of the foregoing discussion, it is helpful to note how Bank of America v. Whitney Bank (261 U. S. 171, supra) has been treated by our courts since the 1945 decision of International Shoe Co. v. Washington (326 U. S. 310, supra). In O’Leary v. Bank of London & South America, Ltd. (272 App. Div. 1002 [1947]), defendant-appellant, a Panamanian corporation not authorized to do business in New York, maintained an account with the defendant New York agency of Bank of London & South America, Limited. It maintained therein cash credits in substantial amounts, purchased and sold securities, collected dividends on securities and made substantial remittances to various persons. In vacating service on the grounds defendant was not doing business within the State of New York and the person served was not a director thereof at the time of the attempted service, the Appellate Division, First Department, *134 cited only Bank of America. The plaintiff had sought to distinguish that precedent on the ground that the purchase and sale of securities by defendant for its own account alone constituted doing business.
In Hastings v. Piper Aircraft Corp. (274 App. Div. 435, 438 [1948]) it was said: “ Nor does the maintenance of a deposit in a local bank by the nonresident defendant constitute the doing of business by the depositor in this State. While borrowing of money from a local bank-after negotiations conducted here by the officers or representatives of a foreign corporation is a transaction that constitutes the doing of business in New York as to the lender (Chaplin v. Selsnick, 293 N. Y. 529, 538), we think that such a transaction is not the jurisdictional conduct of business on the part of the borrower and does not warrant a holding that defendant is present within this jurisdiction, especially where the loan is intended for use in another State (see Bank of America v. Whitney Bank, 261 U. S. 171; cf. Greenberg v. Lamson Brothers Co., 273 App. Div. 57).”
That Bank of America still has vitality and is not yet in limbo is further established by the decision of the Court of Appeals, Second Circuit, in Bourgeois v. Banque Francaise du Commerce Exterieur (250 F. 2d 584 [1958]). There plaintiff, a resident of Florida, sued for over $6,000,000 in the District Court for the Southern District of New York. The defendant was a bank for international trade established under French law whose stock was owned entirely by nationalized banks and public institutions of France. Defendant was not authorized to do business in New York, maintained no offices here, and had no representatives here. Defendant financed imports and exports, in support of which it maintained accounts with several New York banks which acted as its correspondents and agents. In addition to the operation of bank accounts, these independent correspondent banks carried on all the customary activities and rendered all services expected of correspondent banks, that is, such as were listed in the quotation from Bank of America {supra). An officer of one of these correspondent banks was served with process. Overruling plaintiff’s contention that a question of fact was presented as to whether defendant was doing business in New York, the appellate court affirmed an order dismissing the complaint for lack of jurisdiction over defendant’s person “on the authority of Bank of America v. Whitney Bank.” Although not cited in their briefs by counsel in that case, the Per Curiam memorandum decision contained the added notation, “ and see ” International Shoe and McGee.
*135 In addition to maintaining that its relationship with correspondent banks in New York subjects defendant to process in this State, plaintiff points to defendant’s solicitation of business through an advertisement in the New York Times as an added ingredient of its activities in New York. It is settled that the mere solicitation of business for a foreign corporation is not enough to constitute doing business in the State (Miller v. Surf Props., 4 N Y 2d 475, 480). While “ solicitation * * * plus some additional activities ” (International Shoe Co. v. Washington, 326 U. S. 310, 314, cited and quoted in Miller, supra), may be enough for jurisdictional purposes, I conclude that an isolated advertisement of solicitation, together with the customary activities of correspondent banks, is insufficient to establish in personam jurisdiction (Raiola v. Los Angeles First Nat. Trust & Sav. Bank, 133 Misc. 630, a 1929 decision involving continuous solicitation; cf. MacInnes v. Fontainbleau Hotel Gorp., 257 F. 2d 832).
As noted, shortly after appearing specially to vacate the personal service of process, defendant, further appearing specially, moved to vacate the warrant of attachment upon grounds relating to the merits. Plaintiff urges that the making of the second motion constituted a general appearance by defendant and vitiated any special appearance in the first motion. Although subdivision 1 of section 237-a of the Civil Practice Act states that ‘‘ a defendant may make a special appearance solely to object to the court’s jurisdiction over his person ” (but not on the merits; see Hillcrest Paper Co. v. Ohlstein, 10 Misc 2d 286, affd. 6 A D 2d 864), a motion objecting to the court’s jurisdiction over the subject matter may be joined therewith without waiver, under subdivision 2; and the Appellate Division, First Department, has long held that a defendant may appear specially to vacate a warrant of attachment against his property without effecting a general appearance in the action (Zabriskie v. Second Nat. Bank, 204 App. Div. 428; Berkley v. Korcad Corp., 8 A D 2d 808; Lynch v. Plesch, 8 Misc 2d 612, affd. 4 A D 2d 945; 3 Carmody-Wait, New York Practice, pp. 406-407 and 1962 Supp., p. 45). Involved in such cases were not only defects apparent from plaintiffs’ papers or from statutory provisions but also contentions going to the merits of the action. Accordingly, I hold that defendant has not entered a general appearance herein.
Since it is immaterial who was served with process if defendant was not doing business in New York (Ultramar Co. v. Minerals Separation, 236 N, Y, 647; Wilcox-Gay Gorp. v. Hosho *136 of America, 22 Misc 2d 869, 870), in view of my ruling that defendant is not amenable to in personam jurisdiction, I find it unnecessary to determine whether the persons upon whom service was made were proper persons to be served under section 229 of the Civil Practice Act.
The second motion by defendant is to vacate the warrant of attachment on the grounds that the claims are barred by the Statute of Limitations and have been released, and that defendant is an instrumentality of the Argentine government entitled to sovereign immunity. The latter ground was also made the basis for a motion by the Ambassador from Argentina, appearing specially; but following a communication from our State Department declining to file a suggestion of sovereign immunity, this motion was permitted to be withdrawn on application in open court. As stated (supra), that advice, at least on this submission, is here dispositive.
I cannot determine from the complaint and the conflicting affidavits that plaintiff cannot ultimately succeed. Since the warrant of attachment may be vacated only if the papers clearly establish that plaintiff must ultimately fail (American Reserve Ins. Co. v. China Ins. Co., 297 N. Y. 322, 325; Bard-Parker Co. v. Dictograph Prods. Co., 258 App. Div. 638, 640; Compania Panamena v. International Union Lines, 17 Misc 2d 497, 498), this motion must be denied.